Ford, J,
This action is brought on the penalty cf an administralion bond, dated the 24th of January, 1024. against Richard Snook, administrator of Nathaniel Snook, deceased, and two other defendants, who are his securities. When' the cause came on for trial, upon breaches assigned, the parties agreed on a case to tho following effects 1, That the bond was duly executed and delimed. 2. That on tl'o Sds’s of May 1824, the admmirtsr *66 tor filed an inventory, amounting, by appraisement, to $107.13. 3. That he hath made no account of his administration, hut therein has wholly failed. 4. That the person upon whose petition, the ordinary allowed the bond to be put in suit, is a judgment creditor to the amount of $28.63; beside, whom, there are other creditors to the amount of $65.37 or upwards. 5. That the estate, which came to the possession of the administrator, amounted to the sum of $112. 6. It is agreed that judgment be entered for the penalty of the bond, with or without damages, on occasion of the breaches, as the court shall deem lawful; or for the amount of the debt owing to the creditor on whose application the bond is prosecuted ; or for the amount of the assets that came to the hands of the administrator; as the court may think ought to be done. ■
Sept. 1828.
After an adjudication of this court, in case of the Ordinary v. Robinson, 1 Halst. 195, that no assessment of damages on an administration bond, could be made at law, it is not a little surprising, that various projects, for making one, should be presented in the state of this case.
The opinion in 1 Halst. was formed after two arguments, by learned counsel, and upon a deliberate examination of every case and dictum. It appeared that every effort, through a series of years, to obtain an assessment at law upon an administration bond, had uniformly failed. The obstacles to it were insurmountable, and no precedent of such an assessment was to be found in the books. Though the expedient of assigning for breach, the non payment of a debt owing to a particular creditor, had been repeatedly overruled; one of the judges of this court, at length came into it, and prevented the opinion in Robinson’s case from being unanimous. If that expedient be now relinquished, (and it seems at present not to have a single advocate,) the opinion in 1 Halst. may be considered an unanimous oue against an assessment; and that all we can do at law is, to give judgment for the penalty. Such was the opinion of the court in that case; and I am bold to say there never was a case, upon argument, in which this, or any court of law, went further.
But having myself l?een a concurring member of 'the bench, when that decission was made, it would not become me to repose silently on its authority ; I shall therefore endeavour to demonstrate : that the assessment of damages, on an administra *67 don huud, belongs by statute to the Prerogative Court only , ¡hat there is nothing in law or reason to prevent it from being done there ; and that a court of common law does not possess the means of assessing damages on such bonds»
Jñrst. The assessment of damages, on administration hands, appertains by statute to the Prerogative Court. The 11 th section of the act, Rev. Laws 177, prescribes (he condition of these bonds; and it is the samo in substance with that prescribed by 22 and 23, Car. 2. The 12sh section, is in these words 1 “ and in case any such bonds shall become forfeited, it shall be lawful for the ordinary or surrogate general, to cause the samo to be prosecuted in any court of record, at the request of any party grieved by such forfeiture ; and the moneys recovered upon such bond shall be applied towards; making good the damages sustained by tho not performing the said condition, in such manner a« the judge of the Prerogative Court shall, by his sentence or decree, direch” It will be conceded, that the statute means, by the word “ applied,” that the moneys recovered shall be paid towards making good the damages ia such manner as tho Prero - gative Court shall direct. Before the ordinary can fulfil tin's direc - tion, be must ascertain the persons'injured, and the amount of jach ones damages, or he will never know when he has madethera-good. if this court possessed the means of ascertaining ihe persons and the amount of each ones damages, still it could 10i lawfully me those means, because the statute directs it to be done by a sentence or decree of the Prerogative Court. Those injured, by nonperformance of the condition, will be the creditors of the intestate, and the next of kin; the creditors according to the amount of their respective debts, when liquidated; and the next of kin, according to the surplus' that, may be remaining for thorn after the debts are satisfied. The manner of ascertaining these sufferers, and of making good their respective damages, is to be such as the ordinary shall by his sentence di-, rent. He will direct the administrator to settle the whole estate forthwith, in the Orphans5 Court of the county, giving notice, by advertisement, to creditors to present their demands ; arid ío the next of kin to see that he is charged with the whole es™ Sate that came to his hands, or has been lost through his neglect. Without this or some similar manner to he by him directef, there te no iof‘’1i; :nce, of inspiration» that cas tell site *68 amount of damages which he is to make good out of this bond. He must, by the most necessary implication, have power to ascertain the sufferers and their respective damages, or he can never know when he has performed his duty. It would therefore be flying in the face of this act, to attempt to take the duty out of his hands. To call a host of creditors into court, and liquidate their individual demands, so as to ascertain each ones damages under this bond, is a h\gh judicial proceeding, worthy of that dignified court $ and it would be a notable misconstruction, to take all that power into the hands of this court, (which is not so much as named in the act,) and leave to the Prerogative Court no more than the low ministerial office, of handing over money to certain persons mentioned in our decree, a forra for which would have to be devised.
Secondly. There is nothing in law or reason to prevent this assessment from going to the ordinary. The idea that a court of law is bound, in this case, to assess damages under the act concerning obligations, Rev. Laws 305, sec. 5, is entirely new. That act provides indeed, that in every action upon any bond, ■with condition other than for the payment of money, the plaintiff shall assign breaches, and the jury shall assess damages upon such as the plaintiff shall prove to have been broken ; but those provisions are not, and never have been held applicable to administration bonds for a variety of reasons. First. The Prerogative Court is appointed to ascertain who have been injured, and to make.good their damages by reason of the breach of the condition ; and it cannot for a moment be admitted that there are to be double assessments, one here, and one in that court. Secondly. court of law does not possess the means of assessing damages on these bonds, as I shall presently shew; and it 'is for this reason that the power of doing it is vested elsewhere by statute'. Thirdly. Damages on an administration bond; regard the non execution of a trust, the performance of which is to be specifically enforced in another court, and ought not to be obstructed by substituting definite damages in lieu and bar of that performance. Fourthly. The statute S and 9 Wil. 3 ch. ss. sec. 3, contains a provision, concerning obligations, exactly the same as our act which is a copy of it j yet that statute was never held applicable to administration bonds; nor can a case be found where assessments have been made upon them at laws' *69 We must suppose the courts of Westminster profoundly stupid to have overlooked this statute ever since the 9 of Wil. 8, or else too learned ever to have supposed it applicable to these bonds.
There is as little ground for another idea, that if judgment Is given, without an assessment, the administrator will have to raise the whole penalty, and deposit it as security in the Prerogative Court, before the ordinary will relieve against it. Now there is no such rule in the Prerogative Court. The idea is borrowed from Rev. Laws 104, see. 6; which makes it a rule of the Court of Chancery only, and that too only upon an injunction, and where the merits are to be contested in a dispute between third persons. It has no relation to the Prerogative Court j and is confined entirely to eases of injunction. Here the ordinary is plaintiff in the cause. Must he grant an injunction against himself, to stay himself, in his own suit, until he allows the administrator sufficient time to settle the estate in the Orphans’ Court ? I do not think this objection needs further notice.
One motive assigned, for an assessment at law, on this particular bond, arises from an unaccountable and outrageous disproportion, supposed to exist between $112, the amount of the estate, and the enormous penalty of $2000. I shall presently shew that the sum of $112, inserted in this case, ought to be rejected, as not being a fact within the issue, and altogether extrajudicial. But suppose it to be ever so outrageous, it is the penalty under which Mr. Snook voluntarily accepted the administration of the estate, and if he did not object to it then, he ought not to be allowed to do it now, after he has broken the bond.
Are we, in this collateral way, to correct a penalty, lying exclusively within the legal discretion of the ordinary and his surrogates ? Or will the ordinary be less willing to assess reasonable damages because the penalty is unreasonable ? be it greater or less, he will hold it only as a security to compel this defaulting officer to settle the estate promptly in the Orphans’ Court. After all, it cannot he pretended that damages are to be assessed at law on these bonds, if the penalties are outrageous, but not to be assessed if the penalties are only double. They must all stand upon one rule.
Having shewn that the ordinary is appointed by statute, to make good to all persons the damages sustained by occasion of *70 thje breach of the condition of an administration bond, and that he must have the whole penalty if he should find it necessary for these purposes. I shall next show that this court does not possess the means' of making an assessment on these bonds, and that this is the true reason why the statute has appointed it to. be done elsewhere. -
It is easily to talk about assessments on these bonds. It has been talked about by the wisest judges for more than 150 years, (ever sinee the statute, 23 Car. 2) but without having been effected in a'single instance. The doctrine during that time, has stood established. To (hose who are not fond of putting fixed principles afloat for the introduction of judicial novelties, one would suppose this argument enough of itself. But if a precedent is/ now for the first time to be made, the principles of it ought to be clearly settled. The bond being a security for creditors, and next of kin, the principles ought to be cautiously adopted; Jest, by liquidating damages too high we do an irreparable injury to the administrator; or by setting them too low, we do an irreparable injury to the creditors and next of kin. The ordinary, upon a petition presented to him in the Prerogative Court, would take undeniably the most certain course. He would order the administrator to do, what he ought to have done long ago, to advertise and settle the estate promptly in the Orphans’ Court. There the ''creditors (who are totally unknown to this court) vyouid have notice to produce their demands, and leave to unite x^ith the next of kin, as parties, in bringing the whole estate to light, and in checking the administrator’s accounts. When the debts were liquidated, and paid, and the surplus was paid over to the next of kin, then “ all the denhages sustained by not performing the condition of the bond would be made good,” and the .ordinary would release the penalty or security. But if we assess the damages, it will necessarily preclude him from referring it to the Orphans’ Court, inasmuch as there cannot be two assessments on the same bond. Whatever damages the verdict of a jury shall give to him( as plaintiff in the action, he will take; but he will be justly cautious of taking more than the verdict and judgment measured out to him. Indeed he could take no more; he would be debarred of more, under the 7th section of the act, Rev. Laws 306 ; for the administrator, upon payment of the damages assessed, would be entitled to have the judgment against himself and his securities discharged.
*71 Now the only modes of assessing damages, at Saw. that have ever been suggested, are two 5 one is, that old and exploded mode, so uniformly rejected in Westminster hall, but to which one of tho judges inclined in the case of the Ordinary v. Robinson, of giving the amount of the debt owing to the particular creditor, who got liberty to prosecute the hood 5 not considering that there can be but one assessment on a bond, (unless for breaches that happen afterwards, Rev. Laws 306, sec. 7) and therefore that the remedy for other creditors and next of kin, would be done away forever. Bin I forbear multiplying objections which would fairly lio against this «node of assignment, because I do wot fiad now, an advocate for it left.
But a substitute is now devised, and it truly may be called new, as it, is not to be found in any book, nor has been warranted by any judicial decision in the course of a century and a half, since the statute first prescribed the condition of these bonds. It is, to assess damages, to the whole amount of the intestate^, estate, without any allowance for payments mads to creditors, though the administrator shall have fairly paid out half, or two thirds, or even more, of all the estate that ever cams to his hands. It assumes, gratuitously, that this court c;;n ascertain the whole estate, in a simple action on the bond, in the absence of all the creditors and next of fan, who knew aay thing of it ant! who, though deeply interested, are no parties to the suit, nor have so much as notice of ills actios. It may bo said that the amount, in this cause, is already ascertained in the stele of the case ; that the estate amounted to just §112. How, the practice of the surrogate-general, and of all his surrogates, is to take the penalty of the bond, as nearly as nsay be in double the amount of the estate, and as this is taken in tho penalty of §2000, a question naturally arises how the partios got the estate reduced sg low, as the miserable sum of §112. I do not mean 10 impute to these parties any unfair practices; it would be highly ungenerous to do so io a case where I do not know, nor even suspect any 5 but in other cases it is plain, that the amount of the estate must be taken either from the administrator, or from the proseciuirr- creditor, or both. Now against either, or both together, I. enter a solemn protest, in behalf of tho rights of honest credi • tors and next of kin. it ought not to bo taken alike? upon the word or faith of m administrator, who baa r.egkcvH kb duty. *72 set his bdnd at defiance, trodden under foot his vows, and having wasted or squandered the estate,.is deeply interested to disguise the amount of what he is accountable for, and make it as small as possible. To trust this matter to the prosecuting creditor, is nearly as objectionable. Being privy to his own debt, he may be presumed to know that. But it may not exceed five dollars. He may be the most ignorant man, for business, among all the creditors, and ksow least about the affairs of the intestate. It is not supposable that he will fling away his time, and double the amount of his debt, in hunting evidence for the benefit of creditors and next of kin, who though deeply interested, are absent, not knowing of his labors ; and if they did, might not prize them, but see them with distrust. How easily might an administrator, who had wasted a great estate, hire the smallest, and most corrupt man that was to be found among the petty creditors, to apply for the prosecution of the bond, and under his unblessed auspices get the amount so cut down, that creditors and next of kin, should loose all their money. It will not do to say, that he is appointed by the ordinary ; his appointment is to prosecute the bond, but by no means to compromise, compound, or settle the'estate. Nor will it do to say, that there is an inventory ; for in many cases, none has ever been filed, and oftener it is a meagre document in which there is no account of bends, notes or book accounts. Administrators are generally unwilling to charge such against themselves, until they receive something upon them ; yet, though not in the inventory,- they may constitute the most valuable part of the estate j beside which, under a decree for sale of lands, the administrator may get the whole real estate into his hands, and not a cent of-it appear in'the inventory. Now, what possible means have we of ascertaining the true account of the intestate’s estate, in a collateral action upon the bond, when the Orphans’ Court often find themselves barely able to effect it, upon a direct inquiry, though they can put the administrator (which we have no power to do) on his corporal oath, and moreover have the assistance of all the next of kin, to the intestate who knew his affairs, and of all the creditors who had relations with him in business. I think it is demonstrated therefore, that this court, in this action, does not possess the means of assessing damages on the plan proposed.
But if we possessed the means, I hold that it would be unlaw *73 ful to give damages in every case to the amount of the whole estate. If we make any assignment, it must be such just and righteous damages, as the ordinary is able to prove. Suppose the whole estate was $10,000, and the administrator had paid out $9,900 to creditors and next of kin, in just and legal priority, and only the inconsiderable sum of one hundred dollars lay back in his hands; could a judge conscientiously charge a jury to give ten thousand dollars of definite damages against the administrator, because there was one hundred that by some accident or delay remained unadministered ? Or if he could, might he not expect '■Miie trouble in forcing the consciences of twelve honest men, acting under oath, into such a verdict! But if these difficulties were surmounted, at what an awful remove would the verdict stand from that mild, just and righteous assessment, that the ordinary would have directed to be made in the Orphans’ Court, where the settlement of the estates of intestates lawfully belongs ? Moreover, it is too evident to be concealed, that such a verdict would not be an assessment of damages, though falsely so called; it would be a penalty after all; a penalty in lieu of damages ; one penalty in lieu of another; and under the most dangerous disguise. It will be in the legal form, and have all the' appearance on record of real, liquidated damages, so as to preclude the ordinary from doing the same, as certainly there cannot be iwo assessments on one bond ; nor would he venture to depart from what is done in this court upon the verdict of a jury, nor to give an appeal from their verdict to the Orphans’ Court. He would decree the whole $10,000 first to the payment of creditors, and all the residue he would divide among the next of kin. And this terrible destruction, would fall on the administrator’s bead, from our attempt to do what was never done before, and according to my understanding of the statute we have no right iodo. I am therefore of opinion, according to the ésíablished course, that this court ought to do no more than render judgment for the penalty with costs. Let the administrator petition the ordinary for a stay of execution, or stay of sale, for such reasonable further time as may enable him to settle the estate in the Orphans’ Court, in satisfaction of the bond and judgment.
Drake concurred.
Ch. Justice,
said, that if the question was res integra, he should think that the assessment might be made at law, but cti *74 der the case of the Ordinary v. Robinson, 1 Hals. 195, the question was decided after two arguments, and acquiesced in3 ai!c* aPon authority of that decision, he united in the opinion delivered.
Judgment for the penalty of the bond.